T.C. Memo. 2006-2

UNITED STATES TAX COURT

PHYLLIS J. MERENDINO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8265-04.                    Filed January 3, 2006.

C. Page Hamrick III, for petitioner.

Stephen J. Neubeck, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Petitioner challenges respondent's April 2004 determination that she is not entitled to equitable relief from joint and several liability under section 6015(f)[1] for

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner's taxable year 1996.  The issue for decision is whether respondent abused his discretion in denying petitioner such relief.  We hold that he did not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Aventura, Florida, when she filed the petition.  At all material times, petitioner was, and remains, married to Dr. John Merendino (Dr. Merendino).

Dr. Merendino's Sale of Business

In the early 1990s, Dr. Merendino established a business directed toward providing rehabilitation to elderly disabled people in nursing homes.  In 1995, while Dr. Merendino was in negotiations to sell his business, the U.S. Department of Justice ("Justice Department") was investigating Medicare payments made to Dr. Merendino.  The Justice Department learned of the pending sale and mandated that the sales proceeds be placed in escrow pending the final resolution of the matter.  On June 12, 1997, the Justice Department endorsed a settlement agreement authorizing disbursement of the funds, all of which were applied to taxes or to settle the civil Medicare case.  Ultimately, Dr. Merendino did not receive any significant portion of the sale proceeds in cash because the proceeds were held in escrow.

Petitioner's Relationship With Dr. Merendino

Petitioner and Dr. Merendino (the Merendinos) have been

living apart since at least 1998.[2]  Petitioner resided in Aventura, Florida, while her husband resided in Rockville, Maryland.  The Merendinos are not legally separated, nor has either filed for divorce.  In documents petitioner submitted to respondent with her Form 8857, Request for Innocent Spouse Relief, petitioner stated that in the 12-month period preceding the date she filed her request for innocent spouse relief, Dr. Merendino was present at her Florida residence for New Year's week and for an unspecified number of other days.  At the time of her request for equitable relief, petitioner stated that she lived with Dr. Merendino during the months of July and August of 1999.  Dr. Merendino stated in an affidavit that he traveled to Florida during that time in an effort to save his marriage.  The Merendinos have a son in his forties who is schizophrenic and requires assisted care and financial support.

Tax Year 1996

Neither petitioner nor Dr. Merendino, each of whom individually had taxable income for the year 1996, timely filed a tax return for 1996.  After respondent received information from third-party payors of payments made to petitioner in 1996,

---

[2]The record is unclear as to exactly when the Merendinos began living separately.  Petitioner testified at trial that she and Dr. Merendino have been living apart since 1993.  However, petitioner and Dr. Merendino each stated in affidavits that they have been living apart since 1998.  When asked at trial, Dr. Merendino could not recall exactly how long petitioner has not resided with him.

respondent contacted the Merendinos concerning the filing of a tax return. On August 8, 1998, the Merendinos executed Form 2848, Power of Attorney and Declaration of Representative, appointing Robert D. Grossman, Jr. (Mr. Grossman), and David A. Carris to be their representatives for the 1996 taxable period.

In late December 1998, respondent received a Form 1040, U.S. Individual Income Tax Return, from the Merendinos for the taxable year 1996 bearing the apparent signatures of both Merendinos, and reflecting a joint filing status. On December 22, 1998, respondent's Revenue Agent Steven Swartz (Mr. Swartz) received a telephone call from Mr. Grossman instructing Mr. Swartz not to process the joint return, as the Merendinos were considering refiling a return reflecting a filing status of married filing separate (MFS). Mr. Grossman confirmed the communication in a letter dated December 22, 1998. On January 4, 1999, Mr. Grossman directed respondent, through Mr. Swartz, to process the received joint return. The tax shown on the return in the amount of $405,860 was unpaid.

On January 5, 1999, Mr. Swartz called Mr. Grossman to inquire about the payment of the 1996 liability. Mr. Grossman informed Mr. Swartz that the Merendinos would not be sending a payment on the 1996 liability, but rather would be seeking a joint offer-in-compromise through respondent's Baltimore office. However, in a letter dated February 11, 1999, Mr. Grossman

informed Mr. Swartz: (1) Petitioner had not signed the joint return; (2) petitioner did not agree to file a joint return; (3) petitioner would likely file an MFS return; (4) the Merendinos possessed separate returns that they would like to file; and (5) respondent should accept the MFS return from petitioner under the equitable relief provisions of section 6015(f). Mr. Swartz did not comply with the request to accept the MFS returns because he believed the regulations specifically prohibited him from doing so.[3]

Petitioner's Assets and Liabilities

Petitioner did not provide respondent with any meaningful financial information during the Appeals process. However, Mr. Swartz found that petitioner earned in excess of $200,000 from stock sales for the years 1996, 1998, 1999, and 2000. In addition, petitioner owned property in Florida that she purchased

---

[3]Sec. 1.6013-1, Income Tax Regs., provides:

Sec. 1.6013-1. Joint returns.

(a) In general. (1) A husband and wife may elect to make a joint return under section 6013(a) even though one of the spouses has no gross income or deductions. For rules for determining whether individuals occupy the status of husband and wife for purposes of filing a joint return, see paragraph (a) of § 1.6013-4. For any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired. * * *

for $450,000, a home in Virginia, and four rental properties in south Florida.

Petitioner's Request for Relief Under Section 6015(f)

Respondent received from petitioner Form 8857, Request for Innocent Spouse Relief, on July 24, 2000. In support of petitioner's request for innocent spouse relief, the Merendinos each provided respondent with affidavits in which they stated that Dr. Merendino signed petitioner's name to the joint return without her knowledge or consent. In November 2003, Dr. Merendino sent a letter to the Appeals officer providing additional background. In that letter, Dr. Merendino stated that petitioner immediately objected when Dr. Merendino signed her name and contacted an attorney to file her taxes separately. Dr. Merendino also stated in the letter that he had received a notice of an overpayment of more than $400,000 from the Internal Revenue Service (IRS), but that those funds were applied to a tax liability he had other than 1996.

The Appeals officer, finding that a joint return was filed, considered relief under section 6015(b) and (c) but determined petitioner was not eligible since the liability involves an unpaid balance or an underpayment, and thus relief could only be considered under section 6015(f). In making this determination, the Appeals officer evaluated petitioner's request under Rev.

Proc. 2000-15, 2000-1 C.B. 447.[4] Despite petitioner's contention that she did not consent to filing the joint return, the Appeals officer concluded that petitioner met the seven threshold requirements of Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. The Appeals officer then examined whether petitioner satisfies all three prerequisites for section 6015(f) relief provided in Rev. Proc. 2000-15, sec. 4.02, and concluded that she failed to meet the elements because: (1) Petitioner was still married to Dr. Merendino and lived with him for some of the preceding 12 months; (2) petitioner did not adequately demonstrate that she had no knowledge or reason to know that the tax liability would not be paid; and (3) petitioner did not adequately demonstrate that she would suffer economic hardship if relief were not granted. The Appeals Office then considered petitioner's claim for relief under Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. 447, 448. The Appeals officer determined that relief should not be granted based on the following factors: (1) The Merendinos, though they maintained different residences, were still married and lived together for part of the 12 months prior

---

[4]On Aug. 11, 2003, the Commissioner issued Rev. Proc. 2003-61, 2003-2 C.B. 296, which supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief which were filed on or after Nov. 1, 2003, and requests for such relief which were pending on, and for which no preliminary determination letter has been issued as of, Nov. 1, 2003. Rev. Proc. 2003-61, supra, does not apply in this case because respondent issued petitioner a preliminary determination letter on Feb. 5, 2002.

to petitioner's claim for relief; (2) petitioner signed the joint tax return for the taxable year 1996 showing a balance due; (3) petitioner was not reasonable in believing that the remaining balance would be paid out of the proceeds from the sale of Dr. Merendino's business; (4) Dr. Merendino never abused petitioner; (5) there was no legal obligation created under a separation agreement or a divorce decree for Dr. Merendino to pay the liability; and (6) considering petitioner's assets and income level, petitioner would not suffer economic hardship if relief was not granted. Taking all these factors into consideration, the Appeals officer concluded that there were insufficient factors in favor of granting relief.

Petitioner filed a petition with this Court on April 11, 2005, seeking relief from joint and several liability. At the time the joint return was filed in 1996, the amount of unpaid tax was $405,860, as stated previously. Petitioner asserts that the amount of the liability allocable to her, as shown by her attempt to file a separate return, was $28,408. Petitioner seeks relief only from the tax that is not attributable to her income.

OPINION

## I. Petitioner Signed the Joint Return

Petitioner originally contended that Dr. Merendino filed the 1996 tax return and forged her signature without her permission. According to the Merendinos, Dr. Merendino signed and filed the

return for himself and petitioner while he was in Maryland and petitioner was in Florida. On brief, petitioner has abandoned her claim that she did not sign the joint return and seeks relief from joint and several liability under section 6015(f). We must, however, note the facts in the record that contradict petitioner's initial version because the diminished credibility of petitioner goes to the merits of the application of section 6015(f). Petitioner's initial contention that she did not sign the joint return and that her husband filed the return in Maryland is directly contradicted by the postmark on the return from the town where she lived in Florida. There is no logical reason for the return to have been in Florida other than for petitioner to review and sign it. Petitioner has not provided any explanation for this inconsistency. The record's direct contradiction of petitioner's statements strongly diminishes her credibility.

Further, even if petitioner did not actually sign the joint return, her own testimony demonstrates that she authorized the filing of the joint return. Petitioner admitted that when she called the accountant in Baltimore to give the information on what she owed, he specifically told her that she and Mr. Merendino were going to file a joint return, and petitioner did not object. Therefore, petitioner's contention that the return was filed without her permission is also contradicted by her own testimony.

## II.  Section 6015(f)

We note this case involves an unpaid tax liability for the year in issue.  Because this case does not involve a deficiency or understatement, petitioner does not qualify for relief under section 6015(b) or (c).  See sec. 6015(b)(1) and (c)(1); Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).  Therefore, our review is limited to section 6015(f), which permits in certain circumstances relief from joint and several liability for unpaid taxes.  See Ewing v. Commissioner, 118 T.C. 494, 497 (2002).  Section 6015(f) grants the Commissioner discretion to grant equitable relief from tax liability to a spouse if, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for any unpaid tax or any deficiency (or any portion of either), and relief is not available under section 6015(b) or (c).  In order to prevail, the taxpayer must demonstrate that the Commissioner abused his discretion by acting arbitrarily, capriciously, clearly unlawfully, or without sound basis in fact or law.  See Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Butler v. Commissioner, 114 T.C. 276, 289-290 (2000). Here, petitioner bears the burden of proving that respondent abused his discretion in denying her equitable relief under section 6015(f).  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Ogonoski v. Commissioner, T.C. Memo. 2004-52.  We have

jurisdiction to determine whether equitable relief is available to petitioner for underpayment of tax shown on a joint return. Ewing v. Commissioner, supra at 502.[5]

Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. 447, 448, prescribes guidelines or factors that will be considered in determining whether an individual qualifies for equitable relief under section 6015(f).  This Court has upheld the use of the guidelines specified in Rev. Proc. 2000-15, supra, and has analyzed the factors listed therein, in reviewing the Commissioner's negative determinations under section 6015(f). See, e.g., Washington v. Commissioner, supra at 147-152.  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. 447, 448, lists seven threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f).  Respondent concedes that petitioner satisfies the threshold conditions in this case.  As discussed earlier, we have found that petitioner did file a joint return.  Therefore, petitioner meets all the threshold requirements under Rev. Proc. 2000-15, supra.

Once petitioner has satisfied the threshold requirements, Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, provides that, in cases where a liability reported on a joint return is unpaid, relief under section 6015(f) will ordinarily be granted if three

_____

[5]Respondent continues to contest our jurisdiction to review sec. 6015(f) claims in this case.

elements are satisfied:  (1) At the time relief is requested, the requesting spouse is no longer married to or is legally separated from the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested; (2) at the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid; and (3) the requesting spouse will suffer economic hardship if relief is not granted.  Relief under Rev. Proc. 2000-15, sec. 4.02, supra, is available only to the extent that the unpaid liability is allocable to the nonrequesting spouse.  We shall now address each of these factors.

1.   Marital Status

Petitioner is still married to Dr. Merendino.  Although they have no plans to legally separate, they have been living apart since at least 1998.  However, petitioner admitted that she and Dr. Merendino lived in the same residence for 2 months during the 12-month period prior to the date that petitioner filed her request for relief.  Therefore, in light of petitioner's own statements, we conclude that the Merendinos failed to satisfy the 12-month period required by Rev. Proc. 2000-15, sec. 4.02.

2.   Knowledge or Reason To Know

The relevant knowledge in the case of a reported but unpaid liability is that the tax would not be paid when the return was

signed.  <u>Wiest v. Commissioner</u>, T.C. Memo. 2003-91 (citing Notice 98-61, sec. 3.03(2)(b), 1998-2 C.B. 756, 757); see also Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449.  Petitioner contends that she did not know or did not have reason to know that the liability would not be paid.  Petitioner asserted in documentation submitted to the Appeals Office that she expected the tax liability would be paid out of the sale of Dr. Merendino's business and that although a portion of the outstanding liability was attributable to her, Dr. Merendino had always paid the tax liabilities in previous years and she expected him to do so again for the 1996 liability.  At trial, petitioner testified that she believed the funds to pay the tax liability would come from the sale of Dr. Merendino's business and from the overpayment of $400,000 that Dr. Merendino made for a previous year.  Petitioner further stated that she relied on Dr. Merendino to file the return and pay the taxes.

Petitioner's reasons for believing that the tax liability would be paid are not credible.  The return was filed in December 1998.  It was not reasonable for petitioner to rely on the funds from the sale of Dr. Merendino's business to pay for the tax liability by the time the return was filed.  The settlement of the lawsuits against Dr. Merendino's business occurred on June

12, 1997. Petitioner admitted to both Mr. Swartz and this Court that she was aware that Dr. Merendino did not receive any significant cash proceeds from the sale of the business.

Petitioner contended at trial that she expected the funds from the overpayment would pay the 1996 liability. Dr. Merendino stated during the Appeals process that he was notified about the overpayment, but those funds were never available to him. There is evidence that Dr. Merendino told petitioner that he had an overpayment to pay the tax, but there is no evidence of when he told her or whether petitioner had reason to believe those funds would be available at the time the return was filed showing the balance due. The source of the overpayment was from overpaid Federal employment taxes of a business which was sold 2 years earlier. Further, Dr. Merendino never received a refund from the alleged overpayment. We believe that a prudent person would inquire about the details of the overpayment and when it would be paid before relying on the existence of an overpayment to pay a tax liability that was more than $400,000. In addition, the Merendinos' attorney's own statements near the time the joint return was filed, indicating that the Merendinos wished to negotiate a joint offer-in-compromise, diminish the plausibility of petitioner's vague testimony regarding the expectation of receiving the refund from the overpayment. Given petitioner's other misstatements, we do not find the expectation of funds from

the overpayment to be a credible basis to show that petitioner had reason to believe that the tax would be paid.

The evidence also points to the conclusion that petitioner actually knew that the liability would not be paid when the return was filed. The record demonstrates that petitioner was extremely concerned about the filing of the 1996 tax return and had sought the advice of accountants to file a separate return. The most prominent indicator of petitioner's knowledge that the liability would not be paid when the return was filed was her own attorney's statement after the joint return was filed. Acting on petitioner's behalf, he informed Mr. Swartz that the Merendinos were discussing a joint offer-in-compromise arrangement with the IRS in Baltimore to pay for the joint liability. Therefore, the circumstances reveal that petitioner was aware of a large tax liability due and problems associated with the payment of that tax when the return was filed in December 1998. We believe any testimony of petitioner to the contrary is based upon misunderstandings as to her knowledge at the time the return was actually filed.

### 3. Economic Hardship

Petitioner contends that she will suffer economic hardship if respondent does not grant relief under section 6015(f). Petitioner cites her age (she was 65 at the time she requested relief), her inability to work, her health problems, and the

responsibility she has to care for and support her 40-year-old schizophrenic son.

Petitioner has not established that she will suffer economic hardship if relief is not granted. Respondent repeatedly requested copies of current income information and current financial information. Petitioner failed to provide this information. The record demonstrates that petitioner had income in excess of $200,000 from stock sales for the years 1996, 1998, 1999, and 2000. Petitioner contends that she sold the stocks in 1996 and 1999 to supplement her living expenses. However, petitioner's unfiled separate tax return reflects income prior to her stock sales in excess of $242,000. In addition, at the time of her request for relief, petitioner owned the property that she purchased in Florida for $450,000. Petitioner also jointly owned a house in Virginia and four rental properties in south Florida. Further, the fact that petitioner did not provide any financial information as requested supports a finding that respondent did not abuse his discretion in concluding petitioner would not suffer economic hardship. See Orum v. Commissioner, 123 T.C. 1, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005). Thus, petitioner has failed to satisfy each of the three factors under Rev. Proc. 2000-15, sec. 4.02, and therefore does not qualify for equitable relief under that section.

Where relief is not available under Rev. Proc. 2000-15, sec.

4.02, then Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. 447, 448-449, sets forth guidelines or factors that the Commissioner will consider in deciding claims for equitable relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448-449, sets forth the following positive factors which weigh in favor of granting equitable relief under section 6015(f):

(a) <u>Marital status</u>. The requesting spouse is separated * * * or divorced from the nonrequesting spouse.

(b) <u>Economic hardship</u>. The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(c) <u>Abuse</u>. The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

(d) <u>No knowledge or reason to know</u>. In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. * * *

(e) <u>Nonrequesting spouse's legal obligation</u>. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability. * * *

(f) <u>Attributable to nonrequesting spouse</u>. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, sets forth the following negative factors which weigh against granting equitable relief under section 6015(f):

(a) <u>Attributable to the requesting spouse</u>. The unpaid liability or item giving rise to the deficiency

is attributable to the requesting spouse.

(b) <u>Knowledge, or reason to know</u>. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed. This is an extremely strong factor weighing against relief. * * *

(c) <u>Significant benefit</u>. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency. * * *

(d) <u>Lack of economic hardship</u>. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

The above guidelines are not intended to be exhaustive, and no single factor is determinative whether equitable relief will be granted in a particular case. Rather, all factors will be considered and weighed appropriately. <u>Ewing v. Commissioner</u>, 122 T.C. 32, 48 (2004); Rev. Proc. 2000-15, sec. 4.03.

A. <u>Positive Factors</u>

i. <u>Marital Status</u>

Petitioner and Dr. Merendino lived apart since at least 1998, with a few exceptions that disqualified petitioner under the previous section 4.02(1)(a). Given the overall record, we

view this factor in favor of petitioner.

### ii. Economic Hardship

Our analysis under Rev. Proc. 2000-15, sec. 4.02, concluding that petitioner does not satisfy the economic hardship factor remains applicable here and weighs against petitioner.

### iii. Abuse by Nonrequesting Spouse

There is no evidence in the record that Dr. Merendino abused petitioner. Thus, this is a neutral factor. Ewing v. Commissioner, 122 T.C. at 46; Washington v. Commissioner, 120 T.C. at 149; Rev. Proc. 2000-15, sec. 4.03(1)(c).

### iv. No Knowledge or Reason To Know

As addressed previously, we are not persuaded that petitioner lacked knowledge or reason to know that any unpaid tax liability for 1996 would not be paid. Thus, we find petitioner has failed to carry her burden, and this factor weighs against petitioner.

### v. Nonrequesting Spouse's Legal Obligation

Because petitioner is not separated or divorced from Dr. Merendino, this is a neutral factor.

### vi. Liabilities Solely Attributable to Nonrequesting Spouse

Petitioner seeks relief from paying the amount of tax liability that is attributable to Dr. Merendino. Petitioner agrees to pay the tax liability attributable to her income. Therefore, this factor weighs in favor of petitioner.

B.  Negative Factors

i.  Attributable to the Requesting Spouse

The majority of the liability is attributable to Dr. Merendino.  Petitioner seeks relief only from the unpaid tax liability for that portion of the liability attributable to Dr. Merendino.  Therefore, this factor is neutral.

ii.  Knowledge or Reason to Know

We have concluded above that petitioner should have known the unpaid tax liability would not be paid.  Thus, this factor weighs against granting petitioner equitable relief.  Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. 447, 448-449.

iii.  Significant Benefit

Respondent concedes that petitioner did not significantly benefit from the tax savings.

iv.  Lack of Economic Hardship

As we noted and have found in our analysis previously discussed, petitioner has failed to carry her burden of proving that she will suffer economic hardship if relief is denied. Consequently, this factor weighs against granting petitioner equitable relief.

v.  Noncompliance With Federal Income Tax Laws in Subsequent Years

Respondent did not determine that this factor is present in the instant case, and thus this is a neutral factor.  See Ewing v. Commissioner, 122 T.C. at 46-47.

### vi. <u>Requesting Spouse's Legal Obligation</u>

The Merendinos were married during all relevant times and remain so. In addition, neither petitioner nor Dr. Merendino had legally assumed sole responsibility to pay unpaid tax liability at issue. Therefore, this factor is not present in this case and is a neutral factor.

## III. <u>Conclusion</u>

The testimony in this case is not informative as to what actually led petitioner to sign the joint return for the tax year 1996 in December 1998. Understanding the motivation for that decision would have been preferable to petitioner's mistaken attempt to assert that she never actually signed the return. We cannot speculate as to how petitioner was led to sign the return, and she has not accurately explained why she did. We find as fact that she signed the return, and we conclude that petitioner has failed to carry her burden of showing that respondent abused his discretion in denying petitioner equitable relief under section 6015(f) with respect to the unpaid 1996 tax liability.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.