T.C. Memo. 2008-156


UNITED STATES TAX COURT


ROXANNE M. TOPPI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket No. 6808-05.                    Filed June 19, 2008.


Roxanne M. Toppi, pro se.

Jason M. Kuratnick, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

WELLS, Judge:  Petitioner seeks review of respondent's

determination denying her request for relief pursuant to section

_____

        *This Memorandum Opinion supplements Toppi v. Commissioner,
T.C. Memo. 2006-182.

6015(f)[1] regarding taxable years 1995 through 2001. Petitioner commenced the case after receiving a final notice denying her request for relief under section 6015(f). The case was tried on April 3, 2006, and the parties filed their briefs on June 19 and July 26, 2006. On July 25, 2006, this Court issued its Opinion in Billings v. Commissioner, 127 T.C. 7 (2006), holding that the Court does not have jurisdiction to review the Commissioner's denial of relief under section 6015(f) in a case where no deficiency has been asserted. Our holding in Billings was in accordance with the opinions of the Courts of Appeals for the Eighth and Ninth Circuits in Bartman v. Commissioner, 446 F.3d 785 (8th Cir. 2006), affg. in part and vacating in part T.C. Memo. 2004-93, and Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002), vacating 122 T.C. 32 (2004), respectively. On the basis of Billings, we filed on August 29, 2006, our initial opinion, Toppi v. Commissioner, T.C. Memo. 2006-182 (Toppi I). In Toppi I we held that we lacked jurisdiction to consider petitioner's case. However, we did not enter the decision.

The Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061, amended section 6015(e)(1) to provide that this Court may review the Commissioner's denial of

----

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

relief under section 6015(f) in cases where no deficiency has been asserted. The legislative amendment applies "with respect to liability for taxes arising or remaining unpaid on or after the date of the enactment of this Act." Id. sec. 408(c), 120 Stat. 3062. The date of enactment was December 20, 2006. See 120 Stat. 2922. Petitioner's liabilities for each of 1997, 1998, and 1999 remained unpaid as of December 20, 2006. Accordingly, we now have jurisdiction to consider those taxable years and will decide the case on the basis of the record laid before us at the April 3, 2006, trial.

Petitioner's liabilities for each of 1995, 1996, 2000, and 2001 did not remain unpaid as of December 20, 2006. We do not have jurisdiction to consider those taxable years as they are subject to the earlier version of section 6015 and our holding in Billings. See Bock v. Commissioner, T.C. Memo. 2007-41. Accordingly, the petition, insofar as it seeks relief from liabilities for taxable years 1995, 1996, 2000, and 2001, will be dismissed for lack of jurisdiction.

## Background

We adopt the findings of fact in Toppi I. For convenience and clarity, we repeat here the facts necessary to understand the discussion that follows and find additional facts as necessary to decide the case. At the time of filing the petition, petitioner resided in Franklinville, New Jersey.

Petitioner and David J. Toppi (Mr. Toppi) were married on May 24, 1986, and divorced on June 11, 2002. Except for 5 years following the birth of their son, petitioner worked as a receptionist for several different employers while Mr. Toppi tried to establish a practice as a chiropractor. Petitioner was not involved with Mr. Toppi's chiropractic practice. During 1994 or 1995 when petitioner's son was 5 years old, Mr. Toppi approached petitioner and asked her to return to work because his "business was in trouble."

Petitioner and Mr. Toppi received mail at their home address in Franklinville, New Jersey. Petitioner regularly, but not always, opened and read the mail. At approximately the same time that Mr. Toppi asked petitioner to return to work, petitioner discovered that Mr. Toppi had failed to pay numerous household bills. Petitioner and Mr. Toppi opened a joint checking account from which petitioner began to pay household bills. Petitioner continued to pay household bills from the joint checking account until she and Mr. Toppi divorced on June 11, 2002.

On several occasions Mr. Toppi told petitioner that they should request an extension to file their joint tax return because he did not have enough money to pay the taxes. Petitioner and Mr. Toppi requested an extension from April 15

until August 15, 1995, to file their 1994 tax return.  On August 21, 1995, respondent received petitioner's and Mr. Toppi's joint 1994 income tax return reporting a tax liability of $8,515 and a withholding credit of $598.  To satisfy their 1994 tax liability, petitioner and Mr. Toppi made monthly payments from June 5, 1996, through March 6, 1998.  The final payment on March 6, 1998, satisfied petitioner's and Mr. Toppi's tax liability for 1994 including additions to tax and statutory interest.

On April 15, 1996, respondent received petitioner's and Mr. Toppi's joint 1995 tax return reporting a tax liability of $17,117 and a withholding credit of $1,332.  To satisfy their 1995 tax liability, petitioner and Mr. Toppi made monthly payments from March 6, 1998, through July 14, 2003.  The final payment on July 14, 2003, satisfied petitioner's and Mr. Toppi's tax liability for 1995 including additions to tax and statutory interest.

Petitioner and Mr. Toppi requested an extension from April 15 until August 15, 1997, to file their joint 1996 tax return and subsequently requested another extension to file until October 15, 1997.  On October 20, 1997, respondent received petitioner's and Mr. Toppi's joint 1996 tax return reporting a tax liability of $15,813 and a withholding credit of $1,253.

The withholding credit was attributable to petitioner. On June 28, 1999, respondent sent petitioner and Mr. Toppi a notice of intent to levy because they had defaulted on their installment agreement for taxable year 1996. By February 14, 2006, petitioner and Mr. Toppi satisfied their 1996 tax liability including additions to tax and statutory interest.

Petitioner and Mr. Toppi requested an extension from April 15 until August 15, 1998, to file their joint 1997 tax return. Despite receiving an extension, petitioner and Mr. Toppi filed their return untimely on July 30, 1999, reporting a tax liability of $10,200 and a withholding credit of $1,045. The withholding credit was attributable to petitioner. Petitioner and Mr. Toppi have made no other payments on their 1997 tax liability except Mr. Toppi's single payment of $600.

On August 2, 1999, petitioner and Mr. Toppi untimely filed their joint 1998 tax return reporting a tax liability of $8,513.29 and a withholding credit of $2,050.03, of which $389 was attributable to petitioner. Petitioner and Mr. Toppi have not made any further payments on their 1998 tax liability.

On October 22, 2000, petitioner and Mr. Toppi untimely filed their joint 1999 tax return reporting a tax liability of $7,437.52 and a withholding credit of $4,904.49, of which $1,884 was attributable to petitioner. Petitioner and Mr. Toppi have not made any further payments on their 1999 tax liability.

On August 3, 2001, petitioner and Mr. Toppi signed a Form 900, Tax Collection Waiver, extending the period of limitations for collection of their 1996, 1997, 1998, and 1999 tax liabilities. On June 25, 2004, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, and Form 12510, Questionnaire for Requesting Spouse, for tax years 1995 through 2001.[2] On December 8, 2004, respondent's Appeals Office sent petitioner a letter requesting any additional information that petitioner would have respondent consider in determining whether petitioner was entitled to section 6015(f) relief for the years in issue. On January 27, 2005, respondent's Appeals Office sent petitioner a notice of determination denying petitioner's request for relief pursuant to section 6015(f) for taxable years 1995 through 2001. Petitioner timely petitioned this Court.

## Discussion

The Commissioner has discretion, pursuant to section 6015(f), to grant relief from joint and several liability where relief is not available under section 6015(b) or (c) if the facts and circumstances indicate that it would be inequitable to hold the requesting spouse liable for the deficiency.

---

[2]The record does not demonstrate that petitioner and Mr. Toppi have any tax liabilities for 2000 and 2001. Additionally, petitioner and Mr. Toppi satisfied their 1995 tax liability on July 14, 2003, and their 1996 tax liability by Feb. 14, 2006.

Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. 296, 298,[3] provides a set of circumstances under which relief normally will be granted.  They pertain to:  (1) Marital status; (2) knowledge or reason to know; and (3) economic hardship.  Respondent concedes the first requirement; petitioner was not married to Mr. Toppi when she requested relief.  However, respondent argues that petitioner fails to meet the other two requirements of Rev. Proc. 2003-61, sec. 4.02.

In an underpayment case the knowledge element depends upon whether, at the time the return was signed, the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the income tax liability.  Merendino v. Commissioner, T.C. Memo. 2006-2; Rev. Proc. 2003-61, sec. 4.02(1)(b).  During the administrative proceedings petitioner claimed that she did not know the Federal income tax returns for the taxable years 1996 through 1999 reported balances due and, therefore, at the time she signed the returns she did not know or have reason to know that the tax liabilities would not be paid.  Petitioner signed the returns for taxable years 1996

---

[3]Rev. Proc. 2003-61, 2003-2 C.B. 296, which superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, is effective for requests for relief filed on or after Nov. 1, 2003.  Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 299.  Petitioner's request for relief was filed on June 25, 2004.  Therefore, we consider the denial of relief on the basis of the factors of Rev. Proc. 2003-61, supra.

through 1999. Accordingly, petitioner is charged with constructive knowledge of the amounts shown on the returns as tax due. See George v. Commissioner, T.C. Memo. 2004-261; Castle v. Commissioner, T.C. Memo. 2002-142.

Petitioner's and Mr. Toppi's 1994 Federal income tax return reported an unpaid tax liability. At the time of filing, petitioner and Mr. Toppi did not remit full payment. Likewise, when petitioner and Mr. Toppi filed their 1995 Federal income tax return, they did not remit full payment. On June 5, 1996, petitioner and Mr. Toppi entered into an installment agreement to satisfy the outstanding tax liability for 1994.

Petitioner and Mr. Toppi requested two extensions to file their 1996 Federal income tax return. Additionally, petitioner and Mr. Toppi requested an extension to file their 1997 tax return. Mr. Toppi told petitioner that they were requesting extensions for these years, as well as others, because they did not have sufficient funds to pay the taxes due.

Petitioner and Mr. Toppi received statements from respondent and notices of intent to levy regarding the outstanding liabilities. On June 28, 1999, respondent sent Mr. Toppi and petitioner a notice of intent to levy because they defaulted on an installment agreement concerning their outstanding tax liability for taxable year 1996.

When Mr. Toppi asked petitioner to return to work, he told petitioner that his "business was in trouble." At approximately the same time, petitioner discovered that Mr. Toppi had failed to pay numerous household bills. Additionally, Mr. Toppi told petitioner on several occasions that they should request an extension to file their joint tax return because he did not have enough money to pay the taxes. Accordingly, we hold that petitioner knew or should have known that the tax returns for 1997 through 1999 reported unpaid liabilities and that Mr. Toppi would not pay those liabilities.

In determining whether a requesting spouse will suffer economic hardship if not granted equitable relief, Rev. Proc. 2003-61, sec 4.02(1)(c), refers to section 301.6343-1(b)(4), Proced. & Admin. Regs. Generally, a taxpayer would experience economic hardship if he or she were unable to pay reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. It is the taxpayer's burden to show both that the taxpayer's expenses qualify as basic living expenses and that those expenses are reasonable. Monsour v. Commissioner, T.C. Memo. 2004-190.

Petitioner failed to present any information regarding her economic situation. Petitioner did not disclose her average monthly income and expenses on the Form 12510 respondent

received on June 25, 2004.  Respondent provided opportunities for petitioner to supplement the record.  Petitioner did not avail herself of those opportunities, nor did she do so at trial.  Accordingly, we hold that petitioner has failed to demonstrate that she would suffer economic hardship if not granted relief from joint and several liability.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. 298, provides a nonexclusive list of factors that the Internal Revenue Service will consider when determining whether to grant relief.  The factors are:  (1) Marital status; (2) economic hardship; (3) knowledge or reason to know that the nonrequesting spouse would not pay the liability; (4) nonrequesting spouse's legal obligation; (5) significant benefit; and (6) compliance with income tax laws.  Id.

The first factor is whether the couple is still married. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(i).  As stated above petitioner and Mr. Toppi were divorced at the time of respondent's determination, which weighs in favor of granting relief.

The second factor is whether the requesting spouse will suffer economic hardship if relief from joint and several liability is not granted.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii).  The test under this section is the same as the

test under Rev. Proc. 2003-61, sec. 4.02(1)(c). As discussed above petitioner has failed to demonstrate that she would suffer economic hardship if required to pay the outstanding liability, which weighs against relief.

The third factor is whether petitioner had knowledge or reason to know, at the time she signed the returns, that the income tax liabilities on the returns would not be paid. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii). The test under this section is the same as under Rev. Proc. 2003-61, sec. 4.02(1)(b). As discussed above petitioner knew or had reason to know that the tax liabilities would not be paid, which weighs against relief.

The fourth factor is the legal obligation to pay. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv). Neither petitioner nor Mr. Toppi has an obligation to pay the outstanding liability pursuant to a divorce decree. The factor under this section is neutral as to whether to grant or deny relief.

The fifth factor is whether the requesting spouse has significantly benefited from the unpaid liability. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(v). Petitioner did not benefit significantly from the couple's failure to pay the income tax liabilities for the years in issue, which weighs in favor of relief.

The sixth factor is whether the requesting spouse has made a good faith effort to comply with Federal income tax laws in the tax years after the years in issue.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi).  Respondent conceded that petitioner is in compliance with Federal income tax laws for tax years after 1999, which weighs in favor of granting relief.

Additionally, Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299, sets forth two factors which favor equitable relief if present but have no effect if not present.  They are:  (1) Whether the nonrequesting spouse abused the requesting spouse; and (2) whether the requesting spouse was in poor mental or physical health when signing the return or requesting relief.

As to the first factor of Rev. Proc. 2003-61, sec. 4.03(2)(b), Mr. Toppi did not abuse petitioner.  As to the second factor, petitioner neither argued nor showed that she was in poor health when she signed the returns or requested relief. Neither factor weighs in favor of granting or denying relief; i.e., the factor is neutral.

In sum, the record does not demonstrate that it would be inequitable to deny petitioner relief.  Petitioner had knowledge or reason to know that Mr. Toppi would not pay the liabilities reported on the returns.

Petitioner has also failed to prove that she will suffer economic hardship if relief is not granted. See sec. 301.6343-1(b)(4), Proced. & Admin. Regs. (defining economic hardship as causing the taxpayer to be unable to pay his or her basic living expenses). Accordingly, we conclude that respondent properly denied petitioner relief under section 6015(f).

We have considered all of petitioner's contentions. To the extent not addressed herein, those contentions are without merit or unnecessary to reach.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.