T.C. Summary Opinion 2009-19


UNITED STATES TAX COURT


LINDA SUSAN WILLIAMS, Petitioner, AND JOHN H. HUGO, Intervenor
<u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17993-05S.                  Filed February 10, 2009.


    Linda Susan Williams, pro se.

    John H. Hugo, pro se.

    <u>Kaelyn J. Romey</u>, for respondent.


    PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.  Unless otherwise

indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to an underpayment of Federal income tax reported on a joint tax return filed with intervenor for 2000. The issue for decision is whether petitioner is entitled to innocent spouse relief under section 6015(f).

### Background

Some of the facts have been stipulated and are so found. The stipulations and the attached exhibits are incorporated by reference. Petitioner resided in California at the time the petition was filed.

Petitioner and intervenor were married on October 1, 1993. Petitioner graduated from Dartmouth College with an undergraduate degree and attended Wharton School of Business for 2 years but did not complete her degree. During 2000 petitioner worked for a commercial real estate brokerage firm as an account executive handling domestic and international real estate transactions. In 2000 petitioner received income of $96,386 from her employment, and she had Federal income tax of $11,708 withheld from her wages.

During the marriage intervenor was an investment banker in the real estate finance field. He was self-employed during 2000. Intervenor received a monthly consulting fee of $12,500 during 2000, and his 2000 income was $152,600. At the time, intervenor believed that these monthly payments would be only a fraction of his total compensation for the year from his consulting work. However, he did not receive the substantial yearend bonus that he expected to receive. Federal income tax was not withheld from intervenor's compensation during 2000. Petitioner and intervenor did not make quarterly estimated tax payments for 2000. They had not made estimated tax payments in previous years because intervenor incurred deductible medical expenses that offset his income.

Petitioner and intervenor filed a joint Federal income tax return for 2000. Petitioner provided intervenor with tax information including income, withholding, and business expenses for the year, which she compiled. Intervenor prepared the 2000 return using commercial tax software. Petitioner reviewed and signed the return. The return reported total tax due of $37,471 and a $25,763 underpayment of tax. No remittance was made with the filing of the 2000 return.

Petitioner realized that no quarterly estimated tax payments had been made only after the 2000 return was prepared but before she signed it. Before petitioner signed the return, intervenor

acknowledged to petitioner that the unpaid tax liability was attributable to his self-employment income and claimed that he did not have money to pay the tax at that time. However, intervenor set out, in handwritten notes with his financial documents, specific sources of funds that could be used to pay the tax owed, including rental income from the marital residence and a $10,000 payment relating to intervenor's consulting services. Despite intervenor's statements to the contrary, petitioner believed that intervenor had sufficient funds to pay a portion of the tax due. She further believed that intervenor would enter into an installment plan for the unpaid balance. Petitioner knew that no payment would be made toward the reported underpayment at the time of filing.

During their marriage petitioner and intervenor experienced financial difficulties. Intervenor had serious medical problems that made it difficult for him to work. Although petitioner understood that intervenor's 2000 income was higher than in previous years, she was aware of continued financial difficulties. Petitioner and intervenor borrowed money from petitioner's parents in January 2001 to pay off credit card debt. In February 2001 intervenor's consulting contract was not renewed. By the spring of 2001 petitioner realized that the couple could not maintain their current standard of living.

However, in late 2001 intervenor listed his monthly income as $25,000 on loan documents.

Before filing the 2000 return in April 2001, intervenor had told petitioner that he wanted a divorce, and they were in the process of separating. Intervenor filed a petition for dissolution of marriage on May 29, 2001, listing the date of separation as April 1, 2001. On approximately June 15, 2001, petitioner and her son moved out of the marital residence, a 4,000-square-foot house in Pacific Palisades, California. Intervenor purchased the residence before his 1993 marriage to petitioner. Petitioner and intervenor had resided at the residence since 1998. Petitioner and intervenor refinanced the residence during the marriage, giving petitioner a community property interest in the residence. Petitioner and intervenor had an agreement that they would both vacate the marital residence in order to rent the property. Intervenor listed rental income from the property in his handwritten notes as a potential source of funds to pay the 2000 tax liability. However, intervenor did not move out of the marital residence, and it was not rented. There is evidence in the record that the rent was set at an above-market rate and intervenor refused to lower the rent.

Upon moving out of the marital residence, petitioner moved into a nearby rental property in Pacific Palisades. In May 2001 petitioner began being paid on a commission-only basis and no longer received a monthly salary. As a result, her annual income decreased dramatically. In January 2004 petitioner determined that she could no longer meet the high costs of living in the Los Angeles area and decided to move to a place with a lower cost of living. Petitioner chose to move to the Lake Tahoe area because she could live with her parents rent free temporarily. Petitioner and her son lived with her parents for approximately 1 year. Thereafter, she moved into two different rental apartments before moving into a carriage house on her parents' property at a rent of $1,000 per month in addition to an obligation to provide caretaking services. Employment opportunities in the Lake Tahoe area were limited for someone with petitioner's experience as a commercial real estate broker. At times petitioner worked three part-time jobs because of the seasonal nature of employment opportunities in the Lake Tahoe area. Petitioner's current income is modest, and she often struggles to meet her monthly living expenses. At times she has borrowed from her parents to pay living expenses. During this time petitioner did not receive court-ordered child support payments from intervenor.

Throughout their marriage, petitioner and intervenor generally maintained separate bank accounts. Neither spouse had access to the other's account records. Intervenor had some account statements mailed to a post office box rather than the marital residence. Petitioner and intervenor divided living expenses, which they paid from their separate accounts, and performed regular accountings to reconcile expenses paid by each spouse. For the most part, intervenor paid the mortgage, real estate taxes, and maintenance expenses associated with the marital residence. Petitioner paid for child care costs, utilities, food expenses, and other personal living expenses. At times petitioner had to make the mortgage payment when intervenor did not have sufficient funds to do so.

Petitioner incurred attorney's fees in excess of $1 million during the divorce proceedings, including more than $500,000 from a 10-day trial. Petitioner borrowed money from her parents to pay almost all of the legal fees. During the course of the divorce proceedings intervenor repeatedly disobeyed court orders and interfered with the ordered sale of the marital residence, the couple's principal community asset. Intervenor interfered with the marketing of the marital residence, including refusing to sign a listing agreement, renting the property without petitioner's consent, disconnecting utilities in violation of a court order, interfering with petitioner's access to the

residence, failing to provide keys to the property, failing to timely advise petitioner of water damage sustained by the property and the cost of repairs, and residing in the residence in violation of a court order. Because of intervenor's misconduct, petitioner had to seek intervention from the family law court on numerous occasions. As a result of intervenor's actions, the court imposed on him a $50,000 sanction to be paid to petitioner.

A divorce judgment, dated May 20, 2006, awarded an equalization payment of $490,685 to petitioner. The equalization payment included, among other adjustments, $295,424 for a property settlement relating to the marital residence, $50,000 in sanctions against intervenor, and $97,241.82 for child support arrearage and interest. The divorce proceeds were distributed to pay existing debt obligations of petitioner, principally to reimburse her parents for attorney's fees relating to the divorce proceedings and to pay outstanding legal bills. None of the equalization payment was distributed directly to petitioner. The divorce court retained jurisdiction over the 2000 tax liability pending resolution of this case. Thus, the divorce court reserved the right to allocate the 2000 tax liability between the former spouses as part of the divorce settlement if innocent spouse relief is not granted to petitioner.

On January 16, 2002, petitioner filed Form 8857, Request for Innocent Spouse Relief.  On June 20, 2005, respondent issued a notice of determination denying petitioner's claim for innocent spouse relief.  The notice of determination does not state the basis for the denial of relief.  A preliminary letter dated November 29, 2002, denied relief on the ground that petitioner did not have a reasonable belief that intervenor would pay the tax owed.  The "appeals case memo" recommended against relief based primarily on petitioner's expected receipt of over $500,000 from the divorce.  The Appeals memo stated that the request for innocent spouse relief should be reconsidered if there was a significant change in that monetary award, which was on appeal by intervenor.  The Appeals memo did not consider the effect of petitioner's outstanding legal bills.

Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  After making the election, each spouse is jointly and severally liable for the entire tax due for that year.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  A spouse may seek relief from joint and several liability under procedures set forth in section 6015.  Sec. 6015(a).

Under section 6015(a), a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may

allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f). Section 6015(f) confers on the Secretary discretion to grant equitable relief to taxpayers where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Petitioner contends that she is entitled to innocent spouse relief under section 6015(f) for 2000.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). In previous cases, we have applied an abuse of discretion standard of review for the Commissioner's denial of equitable relief under section 6015(f). Washington v. Commissioner, 120 T.C. 137, 146 (2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002). We do not address the standard of review issue because the standard applied would not affect the result.

As directed by section 6015(f), the Commissioner has prescribed procedures for determining whether a spouse qualifies for relief under that subsection. The applicable provision is

found in Rev. Proc. 2000-15, 2000-1 C.B. 447.[1]  Respondent admits
that petitioner has satisfied the seven threshold conditions for
consideration of a request for innocent spouse relief under
section 6015(f) set forth in Rev. Proc. 2000-15, sec. 4.01, 2000-
1 C.B. at 448.  Intervenor has not raised any issues with respect
to these threshold conditions.  Accordingly, we find that
petitioner has satisfied the threshold requirements for
consideration of a request for innocent spouse relief under
section 6015(f).

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, provides
a safe harbor for section 6015(f) relief.  The Appeals memo did
not specifically analyze whether petitioner qualified for relief
under the safe harbor.  Because we find below that petitioner is
entitled to relief under an alternative provision of Rev. Proc.
2000-15, supra, we have not considered whether petitioner
satisfies the requirements of the safe harbor.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449,
provides a list of positive and negative factors for determining
whether to grant equitable relief under section 6015(f).
According to the revenue procedure, no single factor is

---

[1]  This revenue procedure was superseded by Rev. Proc. 2003-
61, 2003-2 C.B. 296, which is effective for requests for relief
filed on or after Nov. 1, 2003, or for requests for relief
pending on Nov. 1, 2003, for which no preliminary determination
letter has been issued as of Nov. 1, 2003.  Id. sec. 7, 2003-2
C.B. at 299.  The preliminary determination letter denying relief
was issued in this case on Nov. 29, 2002.

determinative, all facts are to be considered and weighed appropriately, and the list of factors is not intended to be exclusive.  Id.; see Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

I.  Factors Against Relief

We first review the six factors weighing against relief, as listed under Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449.

A.  Attributable to Nonrequesting Spouse

The unpaid tax is attributable to self-employment income earned by the nonrequesting spouse and resulted from the failure to make estimated tax payments on such income.  Tax liability attributable to petitioner's 2000 income was satisfied through withholding on her wages.  This factor does not support denial of relief.

B.  Knowledge or Reason To Know

The general rule for reported but unpaid tax liability is that the requesting spouse's knowledge or reason to know at the time the return was signed that the tax would be unpaid weighs against granting innocent spouse relief.  Id., sec. 4.03(2)(b). The requesting spouse must establish that:  (1) She did not know or have reason to know at the time she signed the return that the reported tax liability would not be paid, and (2) it was reasonable to believe that the nonrequesting spouse would pay the

reported tax liability.  Ogonoski v. Commissioner, T.C. Memo. 2004-52; Rev. Proc. 2000-15, sec. 4.03(2)(b).

Typically, in the case of a reported but unpaid tax liability, the relevant knowledge is that the tax would not be paid when the return was signed.  Merendino v. Commissioner, T.C. Memo. 2006-2.  Petitioner knew that no remittance was made with the 2000 return.  Thus, she knew that the tax would not be paid when the return was filed.  However, she argues that she reasonably believed, at the time she signed the return, that intervenor would pay the 2000 tax liability at some point on the basis of assurances that intervenor made to her before she signed the return.  During the preparation of the 2000 return intervenor listed specific sources of funds to be used for payment of the reported tax, including rental income from the marital residence and an expected payment relating to his consulting activities. We do not find credible intervenor's testimony denying that he made any assurances or representations to petitioner concerning his responsibility to pay the tax due.  Petitioner and intervenor took steps to rent the marital residence in 2001, although this plan was not accomplished because of circumstances out of petitioner's control.

It would appear to be reasonable to consider anticipated payments to be made after the return is filed to determine whether a requesting spouse had knowledge or reason to know that

the tax would not be paid.  See <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129 ("a reasonable belief that taxes would be paid must at minimum incorporate a belief that funds would be on hand within a reasonably prompt period of time".)  Petitioner signed the return with a reasonable belief that the tax would be paid out of the rental income and intervenor's consulting income. Petitioner and intervenor maintained separate bank accounts, and petitioner did not have access to intervenor's bank records. Thus, she could not completely know intervenor's financial condition.  Nevertheless, she believed that he had sufficient funds to make a partial payment of the tax at the time of filing (although she knew no payment was remitted with the return).  The record confirms that intervenor had funds available at and around that time to pay the tax liability.

Even though petitioner knew that the reported tax liability was not paid upon the filing of the return, we find that she reasonably believed that the tax would be paid at some point. Given the counterbalancing nature of her knowledge, we find that this factor is neutral in our consideration of whether relief should be granted.

C.  <u>Significant Benefit</u>

The record does not indicate that petitioner significantly benefited (beyond normal support) from the unpaid tax liability. To determine whether the requesting spouse received a significant

benefit from the unpaid tax, we determine whether the taxpayers were able to make expenditures that they otherwise could not have made and that were important to the requesting spouse. Krasner v. Commissioner, T.C. Memo. 2006-31. Intervenor argues that petitioner benefited because he continued to pay the mortgage on the marital residence and petitioner benefited from appreciation in the residence. The Appeals memo found that petitioner significantly benefited from the unpaid tax for this reason.

There is no evidence in the record that petitioner and intervenor acquired any assets or incurred unusual or lavish expenses for petitioner's benefit during 2000. Petitioner apparently left the marriage with no assets or investments beside her interest in the marital residence. Although the marital residence was large, payment of the mortgage does not provide a basis for finding a significant benefit to petitioner beyond normal support. The unpaid tax represents only 4 months of mortgage payments; appreciation of the residence does not constitute a benefit beyond normal support. Petitioner moved out of the residence shortly thereafter and began living in a more modest fashion. There is no indication that the residence, which intervenor purchased before his marriage, was important to petitioner. This factor does not support denial of relief.

D.  Lack of Economic Hardship

The fact that the requesting spouse will not suffer economic hardship from payment of the tax liability weighs against granting relief.  Rev. Proc. 2000-15, sec. 4.03(2)(d). Conversely, the presence of economic hardship favors granting relief.  Id., sec. 4.03(1)(b), 2000-1 C.B. at 448-449.  Economic hardship occurs where the requesting spouse would not be able to pay reasonable basic living expenses if liability for the tax were imposed.  Butner v. Commissioner, T.C. Memo. 2007-136.  In determining a reasonable amount for basic living expenses, the Court considers, among other things:  (1) The taxpayer's age, employment status and history, ability to earn, and number of dependents; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the taxpayer's production of income; (3) the cost of living in the taxpayer's geographic area; (4) the amount of property available to pay the taxpayer's expenses; (5) any extraordinary circumstances; i.e., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship.  See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.  Consideration of unique circumstances of the requesting spouse is appropriate in determining whether she would suffer an economic hardship if

relief is denied.  Sec. 301.6343-1(b)(4)(i), Proceed. & Admin. Regs.

At the time of trial petitioner struggled to pay basic living expenses.  Petitioner submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, to respondent on April 8, 2005.  The form listed no assets but checking accounts with nominal balances and a 1992 used car.  The form also listed monthly living expenses that exceeded monthly income.  The parties have not disputed that these amounts are reasonable.

Intervenor argues that petitioner would not suffer economic hardship because she received nearly $500,000 from the divorce. Intervenor argues that she chose to use the money to pay her legal bills and could have paid the 2000 tax liability instead. The Appeals memo relied on the divorce distribution to find a lack of economic hardship and did not take into account petitioner's extraordinary legal bills.  There is evidence in the administrative record that petitioner's legal bills totaled $650,000 as of April 2004.

First, we note that nearly $100,000 of the equalization payment was to compensate for intervenor's failure to provide child support for his son.  In addition, we find that it is appropriate to consider petitioner's legal fees in determining her ability to meet her basic living expenses.  The extraordinary

legal fees resulted from the contentious nature of the divorce and the division and sale of the marital residence. Section 301.6343-1(b)(4), Proced. & Admin. Regs., expressly authorizes the consideration of extraordinary circumstances faced by the taxpayer and any other factor bearing on economic hardship. Taxpayers are not required to choose among which debt to pay for determining economic hardship, as intervenor contends. Rather, the question is whether the legal fees may be taken into account to determine whether petitioner can meet her basic living expenses. Under the facts of this case, the legal fees would place a significant burden on petitioner's ability to meet her living expenses. Accordingly, we find that petitioner would suffer an economic hardship if liability for the 2000 tax is imposed. This factor does not weigh against relief.

E. <u>Noncompliance With Federal Income Tax Laws</u>

The requesting spouse must make a good faith effort to comply with Federal income tax laws in the years after the year for which relief is requested. Rev. Proc. 2000-15, sec. 4.03(2)(e). Although there were allegations of noncompliance in earlier years, petitioner has complied with her tax obligations for years after 2000. Accordingly, this factor does not support denial of relief.

F.  Requesting Spouse's Legal Obligation

The family law court has retained jurisdiction over the divorce proceeding pending the outcome of this case.  Since it has not ruled on this issue, petitioner remains liable for the unpaid tax.  This factor does not support denial of relief.

II.  Factors in Favor of Relief

We next review the following six factors, as listed under Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448-449 to evaluate whether petitioner is entitled to equitable relief under section 6015(f).

A.  Marital Status

Petitioner and intervenor are divorced.  This factor is in petitioner's favor.

B.  Economic Hardship

For the reasons stated above, we conclude that petitioner would experience economic hardship if section 6015(f) relief were denied.  Accordingly, this factor favors granting relief.

C.  Abuse

Petitioner did not contend that she was subject to abuse. This factor does not apply.

D.  No Knowledge or Reason To Know

For the reasons stated above, we find that although she knew no remittance was made upon the filing of the 2000 return,

petitioner had a reasonable belief that the tax would be paid at some point.  This factor is neutral.

### E.    Nonrequesting Spouse's Legal Obligation

As explained above, intervenor does not have a legal obligation under the divorce decree to pay the outstanding tax liability.  This factor favors granting relief.

### F.    Attributable to Requesting Spouse

As stated above, the unpaid tax was attributable to intervenor's self-employment income.  This factor favors relief.

### Conclusion

Upon consideration of the entire record, we hold that petitioner is entitled to relief from joint and several liability under section 6015(f).

Petitioner's knowledge that the reported tax was not paid upon filing of the return is the only factor that potentially weighs against the granting of relief in this case.  The significance of that knowledge is lessened by petitioner's reasonable belief that intervenor would pay the tax at some point.  Although it is unclear whether it is appropriate to consider payments made after the filing of the return, this factor alone does not support the denial of innocent spouse relief.  "[W]hen the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or

had reason to know that the liability would not be paid". Rev. Proc. 2000-15, sec. 4.03(2)(b). Accordingly, we hold that petitioner is entitled to relief from joint and several liability for 2000 under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.